IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

THERESA B.,

    Plaintiff,

 v.            Civil Action No.
                3:18-CV-1211 (DEP)
ANDREW M. SAUL, Commissioner of
Social Security,[1]

    Defendant.

APPEARANCES:       OF COUNSEL:

FOR PLAINTIFF:

LACHMAN, GORTON LAW FIRM  PETER A. GORTON, ESQ.
P.O. Box 89
1500 Main Street
Endicott, NY 13761-0089

FOR DEFENDANT:

HON. GRANT C. JAQUITH    DANIEL S. TARABELLI, ESQ.
United States Attorney for the   Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

---

[1]  Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew Saul took office as the Social Security Commissioner. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on October 29, 2019, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: November 1, 2019
Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------x
THERESA B.,

                         Plaintiff,

vs.                              3:18-CV-1211

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                         Defendant.
------------------------------------------x

   Transcript of a **Decision** held during a
Telephone Conference on October 29, 2019, at the
James Hanley Federal Building, 100 South Clinton
Street, Syracuse, New York, the HONORABLE DAVID E.
PEEBLES, United States Magistrate Judge, Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:     LACHMAN, GORTON LAW FIRM
                   Attorneys at Law
                   1500 East Main Street
                   Endicott, New York  13761-0089
                     BY:  PETER A. GORTON, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   Office of the General Counsel
                   15 Sudbury Street
                   Suite 625
                   Boston, Massachusetts  02203
                     BY:  DANIEL STICE TARABELLI, ESQ.


           *Jodi L. Hibbard, RPR, CSR, CRR*
         *Official United States Court Reporter*
              *100 South Clinton Street*
             *Syracuse, New York  13261-7367*
                   *(315) 234-8547*

1                    (In Chambers, Counsel present by telephone.)

2                    THE COURT: Plaintiff has commenced this action
3    pursuant to 42 United States Code Sections 405(g) and
4    1383(c)(3), to challenge the determination of the
5    Commissioner of Social Security that plaintiff was not
6    disabled at the relevant times and therefore ineligible for
7    the benefits sought.

8                    The background is as follows: Plaintiff was born
9    in October of 1974 and is currently 45 years old. She was 34
10   years old at the alleged onset of her disability in
11   February 2009, and 42 years old at the time of the hearing in
12   this matter in June of 2017. The plaintiff is somewhere
13   between 5 foot 6 inches and 5 foot 8 inches in height,
14   depending on where in the record you look, page 63 and 385
15   have differing heights recorded. They also had differing
16   weights, 200 to 205 pounds, although plaintiff testified that
17   her weight fluctuates. She's right-handed. She has a high
18   school diploma and attended regular classes in school.
19   Plaintiff has a driver's license but testified she does not
20   drive due to anxiety, that's at page 393 and 405. During the
21   hearing, at page 84, she characterized what she has as a
22   learner's permit. Plaintiff lives in a house in Vestal with
23   five children, and has another that lives elsewhere, also
24   lives with her mother-in-law and one grandson. That's at
25   pages 75, 291, 292, 390, and 406. Her husband is, or was at

1    the time of the hearing, incarcerated.
2            Plaintiff has a work history that includes working
3    as a customer service representative for Verizon from
4    July 1995 to December 2007.  She took a severance package to
5    end that employment, that's at page 292.  She then began
6    working as a stock person in Big Lots.  She was fired from
7    that position for excessive absenteeism, that's at 292, 390,
8    and 406.
9            Physically, plaintiff suffers from bad back, chest
10   pains related to her anxiety, sleep issues, left knee pain,
11   neck pain, and GERD.  She has not, however, undergone any
12   orthopedic treatment.
13           Mentally, plaintiff suffers from anxiety disorder,
14   post-traumatic stress disorder, panic disorder, and
15   adjustment disorder with depressed mood.  She testified that
16   she experienced panic attacks three to five times per week,
17   that's at page 71.  She has had several emergency room visits
18   for panic attacks, that's referenced at page 390.  Plaintiff
19   originally had as a primary physician Dr. Brian Menichello.
20   After he retired she began treating with Dr. John Welch.  She
21   has also seen Licensed Clinical Social Worker Kathleen
22   DiFulvio-Kaepplinger, but testified that she has a problem
23   because that office does not accept her insurance, that's at
24   page 83.
25           In terms of medications, plaintiff has been

18

1  prescribed Wellbutrin, Klonopin, clonazepam, and Cymbalta.
2            In terms of activities of daily living, plaintiff
3  does care for her hygiene but needs someone to be with her in
4  the bathroom when she takes showers due to her anxiety.
5  That's at page 293 and 391.  She cooks, she cleans, she does
6  laundry with help, she testified she stays in the same
7  clothes for several days sometimes due to her condition.  She
8  watches television, she plays on her telephone.  Plaintiff is
9  a smoker, she smokes one pack of cigarettes per day.
10           Procedurally, plaintiff applied for Title II and
11 Title XVI benefits on January 27, 2015.  It was noted that
12 she had made earlier applications and those were denied.  The
13 final denial came on March 6, 2012.  Plaintiff alleged an
14 onset date of February 10, 2009, and in support of her claim
15 of disability, she asserted that she suffers from panic
16 attacks, anxiety, depression, PTSD, and GERD.
17           Administrative Law Judge Bruce Fein conducted an
18 administrative hearing on June 20, 2017 to address
19 plaintiff's applications.  ALJ Fein issued an unfavorable
20 decision on August 15, 2017.  That became a final
21 determination of the Commissioner on August 31, 2018 when the
22 Social Security Administration Appeals Council denied
23 plaintiff's request for review.
24           In his decision, ALJ Fein applied the five-step
25 sequential test for determining disability that we are all

1  familiar with.  He first noted that the earliest disability
2  date based on the earlier denials could be March 7, 2012.
3  After concluding that plaintiff's last date of insured status
4  was September 30, 2015, he concluded at step one plaintiff
5  had not engaged in substantial gainful activity since
6  March 7, 2012.
7           At step two, he concluded that plaintiff suffers
8  from severe impairments that impose more than a minimal
9  limitation on her ability to perform basic work functions,
10 including anxiety disorder, PTSD, panic disorder, and
11 adjustment disorder with depressed mood.
12          At step three, ALJ Fein concluded those did not
13 meet or medically equal the listed presumptively disabling
14 conditions set forth in the Commissioner's regulations,
15 specifically including 12.04, 12.06, and 12.15.
16          After surveying all of the evidence, ALJ Fein
17 concluded that plaintiff retains the ability to perform a
18 full range of work at all exertional levels, subject to the
19 following limitation:  The claimant is capable of low stress
20 work defined as occasional decision making, changes in the
21 work setting, judgment required, and occasional interaction
22 with coworkers, supervisors, and the public.
23          Applying that RFC finding, ALJ Fein concluded at
24 step four plaintiff is unable to perform her past relevant
25 work because it requires interaction with the public.

1          At step five, ALJ Fein applied the Medical
2   Vocational Rules or the Grids set forth in the Commissioner's
3   regulations and concluded that plaintiff is able to meet the
4   demands of competitive, remunerative, unskilled work and
5   therefore is not disabled.
6          As you know, my task is limited, the scope of
7   review that I apply is extremely deferential, and I must
8   determine whether correct legal principles were applied and
9   the determination is supported by substantial evidence.  The
10  Second Circuit has indicated in its decision in *Brault* that
11  any finding of fact by the Commissioner can be overturned
12  only if a reasonable fact finder would have to conclude
13  otherwise.
14         I, despite the fact that the emphasis really of
15  oral argument was not on this point, I looked first at step
16  five and the application of the Grids.  Tellingly, step five
17  is a step where the Commissioner bears the burden of proof;
18  the burden of proving the existence of jobs in the national
19  economy in sufficient numbers that the plaintiff is capable
20  of performing notwithstanding her limitations.  It is, it is
21  proper to use the Grids if the nonexertional limitations do
22  not significantly erode the job base on which the Grids are
23  based.  An ALJ cannot rely on the Grids if there is more than
24  a negligible impact on the ability to perform a full range of
25  work.  The Second Circuit has held that in *Selian v. Astrue*,

1   708 F.3d 409, Second Circuit decision from 2013.

2              In this case, the administrative law judge limited
3   plaintiff to low stress work and occasional decision making,
4   changes in work setting, and judgment required, and
5   significantly, only interaction -- only occasional
6   interaction with coworkers, supervisors, and the public.  SSR
7   85-15 provides that the basic mental demands of competitive,
8   remunerative, unskilled work include the abilities on a
9   sustained basis to understand, carry out, and remember simple
10  instructions, to respond appropriately to supervision,
11  coworkers and usual work situations and to deal with changes
12  in a routine work setting.  The Commissioner has cited, and I
13  agree with, the finding of *Schneider* that the limitation on
14  the ability to handle a reasonable level of stress in a
15  stable and unchanging work environment is consistent with the
16  demands of unskilled work, which includes the ability to
17  change -- to deal with changes in a routine work setting.
18  The problem I have is the question of whether plaintiff can
19  respond appropriately to coworkers, given the limitation of
20  occasional interaction with coworkers, supervisors, and the
21  public.

22             I was persuaded by this court's decision in
23  *Provost*, which is unreported but it's found at 2011 WL
24  12472551, that the finding that a plaintiff is limited to low
25  stress work environment involving only occasional interaction

with coworkers, as the court found, is indicative of a substantial loss of ability to meet a basic work-related activity, namely the ability to respond appropriately to coworkers.

The -- and I looked very carefully at the cases cited by the Commissioner, including particularly *Buschle v. Astrue*, 2012 WL 463334. In that case, there was -- that case I believe is distinguishable because in that case the consultative examiner, Dr. Noia, found that the plaintiff's ability to interact with supervisors and coworkers was only mildly impaired. In this case we have the contrary. Dr. Welch, for example, found a marked inability to get along with coworkers. Dr. Krantweiss opined that plaintiff cannot meet employment, competitive employment standards in working in coordination with others. LCSW DiFulvio-Kaepplinger found marked limitation in ability to respond appropriately to supervisors.

In my view, given the RFC finding, even if the RFC finding is correct, the Grids were inappropriately used, and there should have been vocational expert testimony to determine whether plaintiff can meet the competitive demands of unskilled work.

In this case, the second argument being raised by the plaintiff has to do with the residual functional capacity finding. The burden of course at this stage is upon the

23

plaintiff, we know that from *Poupore*, the Second Circuit's decision. The focus of the RFC is on the ability to perform on a regular basis so under SSR 96-8p, it is provided as follows: Ordinarily RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A regular and continuing basis means eight hours a day for five days a week or an equivalent work schedule.

In this case, the evidence is to the contrary. Dr. Harding, a nonexaminer, who did review some of plaintiff's records, found a moderate limitation in that, in that area, at page 103. It's a phrase, moderate is not defined or explained, it relies on the FOFAE. It's unclear whether -- who wrote that, but in any event, under *Curry v. Apfel*, Second Circuit decision, the use of the term moderately is vague. But in any event, Dr. Harding did find a significant limitation in workplace attendance.

LCSW DiFulvio-Kaepplinger found marked to severe psychiatric symptoms that would significantly interfere with the ability to work in any capacity, at page 294, and an extreme limitation in the ability to complete normal workday, marked limitation in the ability to perform within a schedule and to maintain regular attendance, that's at page 296.

Dr. Welch concluded that plaintiff would likely be absent more than three days per month, that's at 380.

1                    Dr. Slowik, consultative examiner, found a marked
2      limitation in the ability to maintain a regular schedule,
3      that's at 393.  Significantly, the administrative law judge
4      afforded Dr. Slowik's opinion great weight at page 22, yet
5      the ALJ did not account for this limitation set forth in
6      Dr. Slowik's opinion.
7                    Dr. Krantweiss found that plaintiff would be absent
8      more than four times per week.  I noted that this is
9      consistent with plaintiff's past history of anxiety and note
10     that plaintiff, as I indicated previously, was fired from Big
11     Lots for excessive absenteeism.
12                   So in my view, in *Gavazzi*, the Second Circuit has
13     said, to overcome unanimous -- basically these are unanimous
14     medical opinions, the evidence to the contrary has to meet
15     the overwhelmingly compelling standard.  In this case, in my
16     view the medical opinion evidence is unanimous on plaintiff
17     having a moderate to marked limitation on her ability to
18     maintain work pace and attendance as required.  I do not find
19     that the evidence to the contrary is overwhelmingly
20     compelling.
21                   I do not find persuasive evidence of disability,
22     and so I decline to direct a finding of disability, but I do
23     find that plaintiff is entitled to judgment as a matter of
24     law, vacating the Commissioner's determination and remanding
25     the matter for further proceedings.

1    Thank you both for excellent presentations, I
2 enjoyed working with you and this was an interesting case.
3 Hope you have a good afternoon.
4            MR. GORTON:  Thank you, your Honor.
5                 (Proceedings Adjourned, 3:37 p.m.)

1    CERTIFICATE OF OFFICIAL REPORTER
2
3
4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
5    Official Realtime Court Reporter, in and for the
6    United States District Court for the Northern
7    District of New York, DO HEREBY CERTIFY that
8    pursuant to Section 753, Title 28, United States
9    Code, that the foregoing is a true and correct
10   transcript of the stenographically reported
11   proceedings held in the above-entitled matter and
12   that the transcript page format is in conformance
13   with the regulations of the Judicial Conference of
14   the United States.
15
16                   Dated this 30th day of October, 2019.
17
18
19                   /S/ JODI L. HIBBARD
20                   JODI L. HIBBARD, RPR, CRR, CSR
                     Official U.S. Court Reporter
21
22
23
24
25

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547